Larry A. Hammond, Esq.
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2794
lhammond@omlaw.com
AZ Bar No. 004049
Telephone: (602) 640-9000
Facsimile: 602-640-9050
(local counsel)

Timothy J. McInnis, Esq.
LAW OFFICE OF TIMOTHY J. McINNIS
521 Fifth Avenue, Suite 1700
New York, New York 10175-0038
tmcinnis@mcinnis-law.com
NY Bar No. 2205086
Telephone: (212) 292-4573
Facsimile: (212) 292-4574
(admitted pro hac vice)

Attorneys for Plaintiff Samandi

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America ex rel. Masoud Samandi,<br>　　　　Plaintiffs,<br>　vs.<br>Materials and Electrochemical Research Corporation, et al.,<br>　　　　Defendants. | No. CV 05-124-LDW<br><br>NOTICE AND MEMORANDUM IN SUPPORT OF PLAINTIFF SAMANDI'S MOTION TO REOPEN AND RESTORE THE ACTION |

1  Plaintiff-Relator Samandi ("Plaintiff") files this written notice and respectfully
2 moves pursuant to this Court's order filed January 4, 2011, ECF document #280, (the
3 "Order") to reopen this matter and restore it to the Court's docket.

## Background

5  The Order granted Plaintiff's motion to voluntarily dismiss all of his claims
6 against each of the Defendants named in the qui tam complaint in this action without
7 prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).

8  Additionally, the Order provided that after the claims in the Government's
9 complaint in the matter were finally resolved or adjudicated through a final and
10 unappealable determination, the parties to the qui tam complaint were to engage in good
11 faith efforts to settle or mediate any unresolved claims in the qui tam complaint.

12  The Order further provided that if the parties to the qui tam complaint were unable
13 to resolve any of the unresolved claims in the qui tam complaint, either by way of
14 settlement or mediation, Plaintiff could reopen the matter by filing a notice to restore it
15 with the Court, in which case his rights were to be fully preserved as they existed at the
16 time Defendants and/or their representative executed the stipulation of dismissal without
17 prejudice filed in connection with Plaintiff's Rule 41(a)(1)(A)(ii) motion to dismiss.

## Grounds for Reopening and Restoring Case

19  1.  The claims in the Government's complaint in the matter have now been
20 finally resolved.

21  On February 16, 2011, a jury empanelled in the District of Arizona returned a
22 verdict in favor of the Defendants on all claims in the Government's complaint.  On
23 August 29, 2011, the Court denied the Government's motion for a new trial.  And, on
24 February 13, 2012, the Government voluntarily withdrew and terminated an appeal it had
25 commenced in the United States Court of Appeals for the Ninth Circuit.

2.	There are claims in the qui tam complaint that were not resolved by the trial of the Government's complaint.

The qui tam complaint is readily distinguishable from that of the United States in terms of the named defendants, alleged misconduct, affected governmental agency and theories of liability. The Government's complaint named only three defendants: Materials & Electrochemical Research Corp. ("MER") and its co-owners, James Withers ("Withers") and Raouf Loutfy ("Loutfy"). It alleged that these three defendants violated Sections 3729(a)(1), (a)(1)(B) and (a)(3) of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq., in connection with a total of eight proposals for Small Business Innovation Research ("SBIR") funding that MER submitted to the National Aeronautics & Space Administration ("NASA") and/or the Department of Energy ("DOE").[1] These eight proposals were identified by their agency contract numbers as follows:

NAS5-02025

NAS5-02123 [allegations as to SWIP only; not re Kowbel PhD]

NAS5-0233

NAS8-00199

DE-FG03-98ER-82614 [allegations as to SWIP only; not re Kowbel PhD]

DE-FG03-99ER-82823

DE-FG03-00ER-83043

---

[1] The Government's complaint also sought liability on common law claims of breach of contract, payment by mistake, unjust enrichment, recoupment, and negligent misrepresentation. The Court, however, permitted the jury to consider only the common law claim for breach of contract.

DE-FG03-01ER-83279[2]

According to the Government's complaint, NASA and DOE awarded MER an aggregate amount of $5,066,027 in SBIR funding based on the eight proposals it had identified.

At trial the Government presented two distinct theories of FCA liability. Its principal focus was on the representations MER, Withers and/or Loutfy made to NASA and/or DOE concerning MER's purported third-party funding in the form of venture capital commitments submitted during the grant application process on behalf of an ostensibly separate entity called Southwest Investment Partners ("SWIP"). The United States alleged and sought to prove that these SWIP venture capital commitments were materially false in three respects: (1) signatures on the commitment documents by one of SWIP's supposed partners (designated as "Harvie Weber") were, in fact, penned by MER employees and not Harvie Weber, who, in fact, was unaware that her name was being signed on the SWIP commitments; (2) "Harvie Weber" (who was legally known as Marlene Weber) was not even a partner of SWIP and had no knowledge of, or participation in, SWIP's operations, finances or activities; and (3) SWIP was actually MER in disguise and therefore SWIP was not a genuine third-party funding source (and moreover, did not even have the resources to make good on its financing commitments if called upon to do so). As discussed later in this memorandum, the qui tam complaint contains no allegations concerning misconduct involving SWIP.

The United States also alleged and presented evidence that six of the eight proposals at issue in the trial contained materially false representations concerning a single aspect of the professional credentials for one of MER's scientists, namely, Witold

---

[2] The eight proposals at issue were designated at trial as USX 37, 38, 40, 41, 61, 62, 63 and, 64.

Kowbel.[3]  Specifically, the Government claimed and sought to establish that the SBIR proposals at issue represented that Kowbel, who was to play a significant role in the research to which the grants were directed, had a Ph.D. in chemistry from a Polish university, when, in fact, he did not, and further, that the MER, Withers and Loutfy knowingly submitted (or caused the submission of) these false SBIR proposals to NASA and/or DOE.

The jury found for MER, Withers and Loutfy, and against the United States, on both theories of liability, as applicable, with respect to the eight SBIR proposals at issue. The verdict was general; there were no specific findings.  See ECF Docket Document # 312.  Questions left open by the jury verdict included, whether the Government had failed to adequately establish the elements of the alleged FCA violations or whether the jury accepted the Government-named defendants "good faith" affirmative defenses to the specified allegations against them.

While there is some overlap between them, the qui tam complaint contrasts sharply with the Government complaint. For starters, the qui tam complaint names Roger Storm and Witold Kowbel as defendants, while the Government complaint did not. Secondly, the qui tam complaint alleges FCA violations in connection with SBIR proposals submitted to, and/or contracts entered into with, the United States Army, United States Marines and United States Department of Defense (DOD), while the Government's trial did not involve any of these agencies.  In fact, pre-trial the Court granted the Government's motion to voluntarily dismiss its DOD-related claims without prejudice.

Thirdly, the qui tam complaint alleges different theories of liability.  For example, it alleges that Defendants Storm, MER, Withers and Loutfy submitted duplicative

---

[3]  The six Kowbel-related subset of proposals at issue were designated at trial as USX 37, 40, 41, 62, 63 and, 64.

research reports on SBIR contracts (not grant proposals) to different Government agencies and got paid by each agency as though the work had been done independently, i.e., MER got paid twice for the same research.  Similarly, the qui tam complaint alleges that Defendants MER, Withers and Loutfy submitted two research reports for SBIR contracts (again, not proposals) that plagiarized the results of published graduated student theses and falsely presented such results as those of MER's lab. The complaint also alleges that Defendants MER, Withers and Loutfy submitted SBIR grant proposals which falsely represented MER's success in commercializing a compound known as fullerenes/Nanotubes.   None of these theories of liability was even remotely at issue in the Government's trial.

In addition, the qui tam complaint alleges that Defendants Kowbel, MER, Withers and Loutfy  submitted proposals to the Army and DOD, as well as to NASA and DOE, in connection with 20 SBIR grant applications, totaling $8,534,681, which proposals falsely represented that Kowbel not only had obtained a Ph.D. in chemistry from a Polish university, when he had not, but also falsely represented that he had been a tenured associate professor at Auburn University and had been an employee of NASA, when he in fact had not be employed in either of these capacities.  Thus, this claim of liability involving Kowbel's embellished professional credentials differs from the Government's by: naming Kowbel as a defendant; citing Army and DOD agencies as victims of Defendants' FCA violations; and by alleging that the proposals were materially false because Kowbel lied about his employment at Auburn University and NASA, in addition to lying about having obtained a Ph.D. in chemistry from a Polish university.  This aspect of the qui tam complaint also implicates 14 NASA and/or DOE SBIR contracts that were never the subject of the Government's trial, as noted in the following chart.

The chart below summarizes the qui tam claims by category, showing the affected government agency, contract designation (with an asterisk in the Claim D category where the contract was at issue in the Government trial), year and value:

### A. Duplicative Tech Rpt Results (2 Contracts at Issue)

|   | Agency | Contract No. | Year | Amount |
|---|--------|-------------|------|--------|
| 1 | Army    | DAAH10-03-C-0016 | 2003 | [$730,000][4] |
| 2 | Marines | M67854-03-C0039  | 2002 | $99,994 |
|   | Marines | M67854-03-C0039  | 2003 | $600,000 |
| **Total** | | | | **$699,994** |

### B. Plagiarized Theses (2 Contracts at Issue)

|   | Agency | Contract No. | Year | Amount |
|---|--------|-------------|------|--------|
| 1 | DOE | DE-FG03-98ER82614 | 1999 | $750,000 |
| 2 | DOE | FG03-00ER83043    | 2001 | $750,000 |
| **Total** | | | | **$1,500,000** |

### C. Overstated Commercialization: Fullerenes/Nanotubes (3 Contracts at Issue)

|   | Agency | Contract No. | Year | Amount |
|---|--------|-------------|------|--------|
| 1 | DOE | DE-FG03-00ER83042 | 2000 | $100,000 |
| 2 | DOE | DE-FG03-00ER83042 | 2001 | $600,000 |
| 3 | DOE | DE-FG03-01ER83281 | 2002 | $750,000 |
| **Total** | | | | **$1,450,00** |

### D. Embellished Kowbel credentials (20 Contracts at Issue)

|   | Agency | Contract No. | Year | Amount |
|---|--------|-------------|------|--------|
| 1 | DOE  | DE-FG03-01ER83279* | 2002 | $750,000 |
| 2 | NASA | NAS5-02025*        | 2002 | $599,950 |
| 3 | NASA | NAS5-00233*        | 2001 | $600,000 |
| 4 | Army | DAAD19-02-C-0020   | 2001 | $729,763 |
| 5 | NASA | NAS1-00059         | 2000 | $600,000 |
| 6 | NASA | NAS5-00233*        | 2001 | $70,000 |

---

[4] For damages and fines purposes, this analysis uses the Marines "AAAV" contract value and not the Army "Face Gear" contract value, as the duplicative amount.

| | | | | |
|---|---|---|---|---|
| 7  | NASA    | NAS8-02038         | 2002 | $600,000 |
| 8  | NASA    | NAS1 99040         | 1999 | $70,000 |
| 9  | DoD-MDA | DASG60-01-P-0087   | 2001 | $64,999 |
| 10 | DoD-MDA | DASG60-02-P-0169   | 2002 | $70,000 |
| 11 | DoD-AF  | F33615-03-M-5030   | 2003 | $100,000 |
| 12 | DoD-AF  | FA9451-04-M-0157   | 2004 | $100,000 |
| 13 | DoD-MDA | W9113M-04-P-0127   | 2004 | $100,000 |
| 14 | NASA    | NNL05AA78P         | 2005 | $70,000 |
| 15 | Army    | W9113M-06-C-0005   | 2005 | $730,000 |
| 16 | DoD-AF  | FA8650-07-C-5212   | 2007 | $749,969 |
| 17 | Army    | W911W6-08-C-0065   | 2008 | $730,000 |
| 18 | NASA    | NAS8-00199 (90212)* | 2001 | $600,000 |
| 19 | DOE     | DE-FG03-99- ER82823* | 2000 | $750,000 |
| 20 | DoD-AF  | F-33615-98-C-5057  | 1998 | $450,000 |
| **Total** | | | | **$8,534,681** |

3.    The parties to the qui tam complaint have been unable to settle or mediate the unresolved claims in the qui tam complaint.

After the Government withdrew its appeal from the Ninth Circuit, counsel for Samandi spoke with counsel of record for Defendants to discuss a possible settlement of the unresolved claims. Subsequently, at defense counsel's request, Samandi provided a specific, written settlement demand. Samandi's initial offer represented a small fraction of Defendants' economic exposure to the unresolved claims in the qui tam complaint.

In response to this overture, newly retained counsel for Defendants sent a letter dated April 26, 2012 to Plaintiff's counsel advising that Defendants would not pay a single penny to settle the unresolved qui tam claims. In his letter, counsel for Defendants further threatened to seek economic sanctions against Plaintiff or his counsel if Plaintiff sought to abide by the Order's provision for restoring the action upon written notice to the Court. He wrote, "[I]f you should seek to press Mr. Samandi's claims on behalf of the Government, we will seek appropriate remedies, including attorneys' fees. *See* 31 U.S.C. § 3730(d)(4), 28 U.S.C. § 1927 and Rule 11 of the FRCP." Apparently, this represented

Defendants' first and final "good faith effort[] to settle or mediate any unresolved claims in the qui tam complaint," as mandated by the Order.

As a result of Defendants refusal to even discuss a possible settlement of the unresolved FCA claims, Plaintiff has no choice but to apply to have this action reopened and restored to the Court's docket, with his rights fully preserved, as provided for in the Order.

<u>Conclusion</u>

For all of the foregoing reasons, Plaintiff's motion to reopen and restore this action should be granted.

Dated this 27 day of May, 2012

Respectfully submitted,
/s/ Timothy J. McInnis

Timothy J. McInnis
Attorney for Plaintiff Samandi

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2012, I electronically transmitted the within and foregoing Plaintiff's MOTION TO REOPEN AND RESTORE THE ACTION to the Clerk's Office using the CM/ECF System for filing and thereby caused transmittal of a Notice of Electronic Filing to all counsel of record who are CM/ECF registrants in this matter.

I also concurrently sent a copy of the within motion by email to:

> Michael J. Rusing
> mrusing@rllaz.com

Dated this 27 day of May, 2012

/s/ Timothy J. McInnis

Timothy J. McInnis
Attorney for Plaintiff Samandi

11